**2013 BNH 011 Note: This is an unreported opinion. Refer to LBR 1050-1 regarding citation.**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:

                                                                                                               Bk. No. 12-10058-BAH
                                                                                                               Chapter 13

Ralph R. Perry, III &
Charlene M. Perry,

        Debtors

*Raymond J. DiLucci*
*Raymond J. DiLucci, P.A.*
*Concord, New Hampshire*
*Attorney for the Debtor*

*Jodi B. Meade*
*Department of Revenue*
*Child Support Enforcement Division*
*Commonwealth of Massachusetts*
*Boston, Massachusetts*
*Attorney for the Creditor*

## MEMORANDUM OPINION

**I.  INTRODUCTION**

      This matter is before Court on the debtors' Objection to Claim 2 (Doc. No. 67) (the "Objection").   In the Objection, debtor Ralph R. Perry (the "Debtor"), contests whether the claimant, the Massachusetts Department of Revenue, Child Support Enforcement Division ("MDOR"), is entitled to $13,932.39[1] in past due child support, which MDOR contends was due

---

[1] Debtor's Resp. to MDOR's Supp. Resp., Doc. 95 at ¶ 34.

between March 2008 and March 2009.[2] For the reasons set forth below, the Court finds that Claim 2 is allowable as filed and shall, therefore, overrule the Objection.

The Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The parties do not dispute the facts germane to the legal question at issue. The Court draws these facts from the uncontested allegations in the parties' pleadings and those documents attached to the pleadings, the content of which is also undisputed. Additionally, the Court takes judicial notice of both its docket and claims register.

The Objection has worn a long trail through the Court's docket. Soon after the Debtor filed his bankruptcy petition in January 2012, MDOR filed Claim 2 on behalf of Joan Butler, seeking $147,316.93 in past-due child support payments. At the time, MDOR asserted that the entire amount claimed was entitled to priority as a domestic support obligation, pursuant to 11 U.S.C. § 507(a). Just over two months into the case, the chapter 13 trustee filed a motion to dismiss, alleging that the Debtor's proposed chapter 13 plan did not provide for payment in full of Claim 2, among others. In responding to the trustee, the Debtor stated that he would be objecting to several of the underfunded claims. After two hearings on the trustee's motion to dismiss, the Court ordered the Debtor to file objections to any disputed claims before September 28, 2012, or face dismissal of the chapter 13 case.

---

[2] MDOR's Supplemental Response to Debtor's Objection to Claims at p. 2, ¶ 5 (Doc. No. 50).

The Debtor objected to Claim 2 with a bevy of arguments, almost all of which have now been resolved. One of the Debtor's assertions was that the penalties, which MDOR sought to collect in addition to the principal and interest components of Claim 2, should not be entitled to section 507(a)(1) priority because such penalties are not a "domestic support obligation" within the meaning of 11 U.S.C. § 101(14A). MDOR responded, objecting to the substance of the Debtor's arguments. After the Court held a preliminary hearing, it ordered the parties to file supplemental briefs, as the issues raised by the parties were substantial, both in number and complexity.[3] MDOR filed its supplemental brief, stating that during the process of gathering the information necessary to make the filing, it discovered "an accrual error from March 11, 2008 until March 30, 2009," which caused it to undercharge the Debtor during this time (the "Accrual Error").[4] MDOR Supp. Resp., Doc. No. 50, ¶ 5. The debt encompassed by Claim 2 is based on a March 1, 2006 Judgment of Modification entered by the Commonwealth of Massachusetts Worcester Division Probate and Family Court (the "Judgment").[5] The Judgment directs the Debtor to pay $125 per month in child support to Joan Butler, by wage assignment. The Accrual Error occurred when MDOR

> incorrectly entered the [Judgment] as a "per child" order (i.e. $62.50 for each of the two children) rather than a blanket order (one unallocated amount of $125 for both children). As a result of this data entry error, [MDOR] incorrectly reduced the Debtor's child support obligation to $62.50 when one of his children emancipated on March 11, 2008. [MDOR] continued to assess $62.50 per week until the Debtor's youngest child with Ms. Butler emancipated on March 30, 2009.

---

[3] Throughout these proceedings, the Objection has been accompanied by objections to Claims 3 and 4—claims which MDOR also filed. These objections have been resolved, and the related details are not relevant in this context.

[4] There are marginal discrepancies between the Debtor's and MDOR's characterization of the amount of time the Accrual Error affected the Debtor's child support obligation. These discrepancies are not material to the Court deciding the Objection.

[5] See attachment to Claim 2.

3

Id. MDOR asserted that it was obligated to collect the full \$125 per month[6] for the time that the Accrual Error was in effect, plus interest and penalties for the Debtor's failure to pay the proper amount, and that it intended to amend Claim 2 to include the principal, interest, and penalties inadvertently omitted on account of the Accrual Error.

The Debtor objected to this assertion, characterizing MDOR's intent to collect the full \$125 per month plus interest and penalties as "retroactively impos[ing] an additional support obligation" which would be "unjust," "especially during those months when Perry met and or [sic] exceeded his actual obligation." Resp. to MDOR Supp. Resp., Doc. No. 59 at ¶ 16. Further, the Debtor asserted that it would be contrary to MDOR's own regulations to belatedly collect the sum attributable to the Accrual Error. Attached to the Debtor's response were several sets of spreadsheets, which the Debtor argued were a proper accounting of the past due support obligation contained in Claim 2. After these filings, MDOR amended Claim 2 to include the principal, interest, and penalties which were omitted on account of the Accrual Error. The Debtor filed another objection to the amended Claim 2, see Doc. No. 67, which largely reiterated his arguments from the previous round of filings; MDOR filed a further response, also restating its earlier position.

After another hearing, the Court ruled that the penalty component of Claim 2 was not entitled to priority under section 507(a)(1), see April 1, 2013 Order, Doc. No. 89, and ordered MDOR to review and respond to the Debtor's accounting of Claim 2. The Court also directed MDOR to provide additional support for its position with respect to the Accrual Error. MDOR

---

[6] MDOR should have collected \$125 per month, but instead it only collected \$62.50 (half of \$125). It sought to amend its claim to include the uncollected \$62.50 for each of the months between March 11, 2008 and March 30, 2009 and to assess interest and penalties on that unpaid amount.

4

complied with this order, and after reviewing MDOR's filing, the Debtor conceded that his "only remaining objection to the amounts due to [MDOR] on Claim No. 2 result [sic] from the retroactive imposition of Perry's Child Support obligation."  Debtor's Resp., Doc. No. 95 at ¶ 18. The Debtor asserted two bases for this continuing objection.  First, the Debtor claimed that "retroactive imposition" of child support would be contrary to Massachusetts' law.  Second, he argued such an imposition would also violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution.  The Debtor based this second argument on MDOR's failure to notify him in advance of its intent to collect the 2008-2009 child support.

The Court held a final hearing, after which MDOR amended Claim 2 to remove the penalties from the priority claim.  This resulted in a total claim of $158,400.97, including a priority claim of $125,100.80.  The Debtor argues that he should not be responsible for $13,932.39 of the total amount, on account of the Accrual Error.

### III.  DISCUSSION

As this matter is before the Court on an objection to claim, the Debtor has the burden to provide substantial evidence that the disputed amount should be disallowed.  A proof of claim filed in accordance with the Bankruptcy Rules is afforded a prima facie presumption of validity. Fed. R. Bankr. P. 3001(f).  Only if the debtor provides substantial evidence to bolster his objection does the burden shift to the claimant to establish the validity of its claim.  In re Long, 353 B.R. 1, 12 (Bankr. D. Mass. 2006) ("In order to rebut this prima facie evidence, the objecting party must produce 'substantial evidence.'") (quoting United States v. Clifford (In re Clifford), 255 B.R. 258, 262 (D. Mass. 2000).  But, the ultimate burden is on the debtor to establish that a

given claim ought to be disallowed.  Id.   The Debtor has not met his burden to overcome the prima facie validity of Claim 2.

Massachusetts law determines whether the Debtor owes the disputed amount claimed by MDOR.  Massachusetts General Laws, chapter 119A, section 1 provides that "the department of revenue shall be the single state agency within the commonwealth that is designated the IV-D agency pursuant to Title IV, Part D of the Social Security Act[] and hereinafter in this chapter shall be referred to as the IV-D agency."   The statute authorizes the IV-D agency (i.e., MDOR) "to institute collection procedures for all arrearages which have accrued against child support payments owed pursuant to a court judgment or support order."  Id. § 6.   In this case, the March 1, 2006 Judgment, issued by the Probate and Family Court is such an order because it is a judgment that sets child support payments.   The statute further provides that

> [a]ny payment or installment of support under any child support order issued by any court of this commonwealth . . . shall be on or after the date it is due, a judgment by operation of law, with the full force, effect, and attributes of a judgment of this commonwealth including the ability to be enforced; shall be entitled as a judgment to full faith and credit; and a judicial or administrative action to enforce said judgment may be commenced at any time.

Id. § 13(a).

The Debtor does not dispute the existence of the March 2006 Judgment, nor does he dispute MDOR's assertion that he did not pay $125 per month from March 2008 to March 2009.  Rather, the Debtor argues that he should no longer be obligated on the principal amount, nor the interest and penalties, because MDOR did not assess those amounts by wage lien, when they were due.   Under section 13(a) MDOR may commence an action to enforce a judgment at any time; there is no statute of limitations on collection actions.   See 2 Mass. Prac., Family Law and

6

Practice § 50:1 (4th ed.) ("Child support orders remain enforceable as a judgment under M.G.L. c. 119A, § 13 and delinquent amounts remain payable; a child's right of support is not forfeited because a parent does not immediately move to enforce the order; while judgments may be presumed to have been paid after 20 years, M.G.L. c. 260, § 20, this is only a rebuttable presumption and does not bar enforcement even after that."). Given the statutory language, MDOR appears justified in collecting the principal amount due that it did not assess by wage lien between March 2008 and March 2009.

The applicable regulations support MDOR's collection of interest and penalties as well.[7] The regulation provides that "[i]nterest and penalties shall be assessed monthly pursuant to 830 CMR 119A.6.1(3) and (4), if on the Assessment Date,[8] the past-due child support amount exceeds $500, unless the obligor satisfies one of the criteria set forth in 830 CMR 119A.6.1(5)(b)." 830 CMR 119A.6.1(5)(a) (effective December 19, 2003).[9] On computing interest and penalties, the regulation provides that "in the event that [MDOR] makes an adjustment of the total past-due support owed after the Assessment Date, [MDOR] will reassess" the interest and penalties "based on the adjustment in the amount of past-due support owed." Id. at (3) & (4). This language appears to allow MDOR to do precisely as it has done: charge both interest and penalties on principal when it makes an "adjustment" in the amount of past-due support owed. Here, MDOR determined that the Debtor underpaid by $62.50 monthly for nearly a year, and adjusted interest and penalties accordingly.

---

[7] Mass. Gen. Laws. ch. 119A § 6(a) that "[t]he IV-D agency may provide by regulation for the assessment of interest and penalties."
[8] "[T]he last day of each month, the date on which interest and penalties are assessed." 830 CMR 119A.6.1(2).
[9] The version of the regulation effective during the time the Accrual Error caused MDOR not to collect the entire monthly amount of the Debtor's child support obligation.

7

The Debtor has argued that MDOR incorrectly applied its own regulations, and that he should not be required to pay interest or penalties on the amount MDOR failed to collect. Specifically, the Debtor asserts that the exclusions of 830 CMR 119A.6.1(5)(b) exempt him from having to pay interest or penalties.   However, because the Debtor has not exhausted his administrative remedies, the Court shall not take up that issue, for the reasons set forth below.

The collections procedures that chapter 119A, section 6(a) authorizes MDOR to employ are subject to administrative and judicial review.   The statute provides that "upon receipt of the necessary information and documentation from the obligor and the obligee requesting administrative review, the department shall conduct the review and render a written decision of its determination."   Mass. Gen. Laws ch. 119A, § 17.   Judicial review under this section is restricted: "[P]ursuant to relevant provisions of state and federal law, the court may review the determination made by the agency and may correct any mistakes of fact."   Id.   Additionally, section 6(c) provides that "[a]ny person aggrieved by a determination of the IV-D agency pursuant to this section may, upon exhaustion of the procedures for administrative review provided in section 17, seek judicial review within 45 days in the court where the order or judgment was issued or registered."   Under Massachusetts law, a court may not review an agency determination until the review process provided for by statute and regulation is complete.   Gordon v. Hardware Mut. Cas. Co., 361 Mass. 582, 281 N.E.2d 573, 576 (1972).

Here, section 6(c) of the statute specifically requires such exhaustion of administrative remedies before a party may seek judicial review.   In Gordon, the court reasoned that premature review of agency decisions would defy the intent of the state legislature:

> To permit judicial interference with the orderly administration by the commission
> of matters entrusted to it by the Legislature before it has commenced to exercise its

8

> authority in any particular case or before it has had an opportunity to determine the facts and make a final decision, would in effect transfer to the courts the determination of questions which the Legislature has left in the first instance to the commission, and would result in the substitution of the judgment of the court for that of the commission. Courts must be careful not to invade the province of an administrative board. The instances are rare where circumstances will require such interference.

Id. (quoting Saint Luke's Hosp. v. Labor Relations Comm'n, 320 Mass. 467, 70 N.E.2d 10, 12 (1946)). Indeed, Massachusetts courts dismiss petitions for judicial review, in the context of disputes over child support arrearages when the petitioner has not exhausted his options for administrative review. See Brooks v. Adams, 1994 WL 902932 at *2 (Mass. Super. Ct. Nov. 9, 1994) (dismissing case where plaintiff failed to exhaust his administrative remedies under Mass. Gen. Laws ch. 119A). Because the Debtor has not provided any evidence that he sought review pursuant to the statute, the Court may not conduct a review of MDOR's determination.

       The exhaustion doctrine also puts to rest the remaining portion of the Objection, in which the Debtor makes an argument based on federal constitutional principles. The Debtor asserts that he was unaware of his obligation to pay the child support that MDOR did not collect during 2008-2009. He contends that MDOR should have independently notified him of his obligation to pay those amounts as they came due, and that because MDOR did not notify him, it cannot now collect interest and penalties for his failure to pay those amounts. He argues that to require payment of interest and penalties on an amount the Debtor did not know was owed in the first place would effect a deprivation without the due process law, implicating the Fourteenth Amendment of the United States Constitution.

       The United States Supreme Court has long

9

> acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts . . . . Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency. . . . The exhaustion doctrine also acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court.

McCarthy v. Madigan, 503 U.S. 140, 144-45 (1992).  When considering whether the exhaustion doctrine ought to apply, a court must consider whether the individual interests of the party seeking judicial review outweigh the policy favoring exhaustion.  Id. at 145.  McCarthy presents three circumstances in which individual interests may provide sufficient cause for a court to review an agency's determination, despite a party's failure to exhaust administrative remedies: (1) when the party would face undue prejudice if required to wait until the conclusion of the administrative review process before seeking judicial review, (2) when the reviewing agency is not empowered to grant the relief requested, or (3) where the agency is biased or has prejudged the outcome.  Id. The factual scenario before the Court does not appear to match any of the three circumstances identified in McCarthy, nor has the Debtor addressed, in any substantive fashion, the subject of whether he has exhausted his administrative remedies.  The Court will not insert itself into the administrative process at this stage and decide a constitutional issue either prematurely or unnecessarily.

## IV.  CONCLUSION

Accordingly, because the Debtor has failed to present substantial evidence that he is not obligated on the debt owed in Claim 2, the Court shall overrule the Objection and allow the claim as filed.  This opinion constitutes the Court's findings of fact and conclusions of law in

accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

    ENTERED at Manchester, New Hampshire.

Date: October 4, 2013                      /s/ Bruce A. Harwood
                                                       Bruce A. Harwood
                                                       Chief Bankruptcy Judge